EDWIN MUNDO RÍOS ET AL., apelados, v. HON. RAFAEL HERNÁNDEZ COLÓN ET AL., demandados y apelantes.

*Número:* CE-88-265          *Resuelto:* 18 de mayo de 1988

*Marcos A. Ramírez Lavandero* y *Marcos A. Ramírez Irizarry*, de *Ramírez & Ramírez*, abogados de los apelantes; *Manuel D. Herrero García*, abogado de los apelados.

## RESOLUCIÓN

Se acoge el presente recurso como un recurso de apelación. 4 L.P.R.A. sec. 37(a).

A los fines de resolver el recurso y la moción en auxilio de jurisdicción presentados por el Gobernador y el Secretario de Justicia de Puerto Rico, el Tribunal estima procedente y prudente concederle a las partes la oportunidad de manifestar sus respectivas posiciones y contar con información adicional, para cuyos propósitos dispone lo siguiente:

1. La Comisión Estatal de Elecciones tendrá hasta el viernes 20 de mayo de 1988 para informar en cuanto a las medidas que ha tomado, si alguna, para implantar en las primarias a celebrarse el 12 de junio de 1988 mediante el sistema de colegio cerrado, el voto por adelantado y/o preferente de personas tales como: (a) policías estatales y guardias municipales en servicio activo; (b) oficiales de custodia de la Administración de Corrección en servicio activo; (c) empleados de la Comisión Estatal de Elecciones en servicio

activo el día de las primarias; (d) miembros de las Juntas locales y oficiales de la Junta de Inscripción Permanente; (e) médicos, enfermeras, personal paramédico, oficinistas y personal administrativo de los hospitales e instituciones análogas, ya sean públicas o privadas, que estarán trabajando el día de las primarias; (f) bomberos y miembros de la Defensa Civil en servicio activo, y (g) cualquier otro funcionario público o elector en situación análoga.

En caso de no haberse tomado dichas medidas antes del viernes, la Comisión Estatal de Elecciones deberá indicar fundamentadamente el tiempo que necesitaría para implantarlas, bajo el sistema de colegio cerrado, con suficiente antelación a la fecha señalada para celebrar las primarias y, en caso de que no fuere posible implantarlas para dicha fecha, debe indicar el tiempo adicional mínimo que necesitaría para hacerlo, así como la fecha posterior en que podrían celebrarse dichas primarias.

En dicho escrito la Comisión Estatal de Elecciones deberá, además, fijar fundamentadamente su posición sobre el alcance y efecto de los remedios provistos por el tribunal de instancia para la celebración de las primarias bajo el sistema de colegio abierto y la posibilidad de implantarlos en o antes del 12 de junio de 1988, o la fecha posterior para la cual podría hacerlo.

2. La Comisión Estatal de Elecciones notificará personalmente este escrito a todos los abogados de todas las partes en este litigio el mismo día viernes 20 de mayo de 1988.

3. Todas las partes han de presentar alegatos simultáneos el martes 24 de mayo de 1988 en o antes de las cinco (5:00) de la tarde, los cuales deberán cubrir tanto las alegaciones del recurso como los efectos de lo informado en la comparecencia de la Comisión Estatal de Elecciones.

4. El recurso quedará sometido a la consideración del Tribunal el martes 24 de mayo de 1988.

5. Esta resolución se notificará a las partes inmediatamente por vía telefónica y personalmente.

Lo acordó el Tribunal y certifica el Secretario General. El Juez Asociado Señor Negrón García emitió voto disidente.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Voto disidente del Juez Asociado Señor Negrón García.

"Una Constitución es un mural donde cada generación le agrega una nueva capa de pintura, de acuerdo a la altura de los tiempos que le toca vivir." A.E. Mooney, *La elección del Poder Ejecutivo nacional: Legalidad versus legitimidad*, 1985-E Rev. Jur. Arg. La Ley 545, 548 (1985). Bajo el Art. II, Sec. 2 de nuestra Ley Fundamental,(1) no pueden coexistir dos varas para medir la validez de las leyes electorales —una para primarias y otra para las elecciones generales— cuando en el fondo las mismas deben consagrar un mismo valor, a saber, el derecho y la oportunidad razonable a ejercer el derecho al sufragio, que constituye la espina dorsal del mecanismo público-político de la ciudadanía en una verdadera democracia.

Procede, pues, denegarse de plano la paralización de los procedimientos solicitada por el Estado y confirmarse de inmediato el decreto del Tribunal Superior, Sala de San Juan (Juez, Hon. Arnaldo López Rodríguez), que declara inconstitucional la realización en *colegios cerrados* de las primarias a celebrarse por los partidos políticos locales el próximo 12 de

---

(1) Dispone:

"Las leyes garantizarán la expresión de la voluntad del pueblo mediante *el sufragio universal, igual, directo y secreto, y protegerán al ciudadano contra toda coacción* en el ejercicio de la prerrogativa electoral." (Énfasis suplido.) Art. II, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 261.

junio de 1988, al amparo del Art. 4.021 de la Ley Electoral, 16 L.P.R.A. sec. 3171.

## I

Un dictamen en contrario anularía toda nuestra trayectoria jurisprudencial a favor del preeminente derecho al voto. *Ortiz Angleró v. Barreto Pérez*, 110 D.P.R. 84, 88 (1980). El sistema de votación de colegio cerrado no es inconstitucional per se. "Se advierte, pues, que la tutela del derecho al sufragio corresponde asegurarlo inicialmente a la Asamblea Legislativa. A la hora de promulgar una ley electoral, dicho Poder está compelido a adoptar las medidas conducentes a su plena realización y en evitación del fraude electoral. En última instancia, será función de los tribunales, en controversias apropiadas, dictaminar la juridicidad y suficiencia constitucional de tales medidas legislativas al amparo de la Ley Fundamental." *P.S.P., P.P.D., P.I.P. v. Romero Barceló*, 110 D.P.R. 248, 295 (1980), opinión concurrente y disidente. Sin embargo, cuando el sistema de votación adolece de un defecto constitucional de tal magnitud —como el detectado por el foro de instancia— no existe otra alternativa que así reconocerlo. Aquí, ese es el único rumbo decisorio, pues "[t]odo obstáculo al voto debe ser objeto de escrutinio judicial vigoroso . . .". *Ortiz Angleró v. Barreto Pérez*, supra, pág. 92.

El proceso de primarias es resultado directo de la Asamblea Legislativa. *Por primera vez en la historia del país* se ha impuesto ese sistema de votación, e *inexplicablemente, no* se han provisto los mecanismos necesarios para hacer viable el voto adelantado para todos aquellos electores *bona fide* del Partido Nuevo Progresista (P.N.P.) y Partido Popular Democrático (P.P.D.) —que por razón de situaciones peculiares de familia, impedimentos físicos o estar ocupados en funciones indispensables— de otro modo, no podrán concurrir o enclaustrarse a votar en un colegio cerrado de horario

**420**

limitado. Ni en la vista en instancia ni ante este Foro el Estado ha cuestionado ni refutado lo gravoso que a los demandantes Mundo Ríos *et al.* representa la situación.(²) Al

---

(²) Sobre el particular, en su sentencia el tribunal de instancia concluyó:

"Por el resultado a la prueba presentada y tomando en consideración las inferencias lógicas y razonables que de la misma se pueden derivar, así como la credibilidad que le mereció al Tribunal el testimonio de los testigos, encontramos probados los siguientes hechos:

"1) La señora Carmen Belén Almenas, está inscrita, es una elector bona-fide y se propone votar en las Primarias del próximo 12 de junio de 1988 siempre y cuando el sistema de votación sea de colegio abierto. *Si el sistema de votación es el de colegio cerrado no podrá votar en ese evento electoral* ya que tiene un niño menor de edad y no tiene ninguna persona que lo atienda y ella no está dispuesta a llevar a su hijo a encerrarse en un colegio.

"2) Doña Lourdes M. Rivera García es una electora bona-fide y se propone votar en las Primarias del 12 de junio siempre y cuando le permitan ejercer el derecho al voto. Esta persona trabaja como Oficinista de Records Médicos en el Dispensario Dr. José S. Belaval del Municipio de San Juan y el horario de su trabajo es a base de turnos que se alteran, a saber: de 7:00 de la mañana a 3:00 de la tarde y de 12:00 del mediodía a 8:00 de la noche.

"Ella tiene que trabajar los domingos su horario regular, ya que en ese Dispensario se ofrecen servicios médicos hasta las 8:00 de la noche.

"En las pasadas Primarias Presidenciales que se celebraron el pasado mes de marzo, *ella no pudo votar porque su trabajo no se lo permitió*. En adición a lo anterior, esta persona no puede estar en lugares encerrados por mucho tiempo, ya que su salud no se lo permite debido a que sufrió un paro cardio-respiratorio.

"*De estas Primarias celebrarse bajo el sistema de colegio abierto ella podría participar sin ninguna dificultad.*

"3) La Sra. Gloria Gordil Vda. de Vázquez, es electora bona-fide y está cualificada para votar. Si las Primarias a celebrarse el próximo 12 de junio se realizan bajo el sistema de colegio cerrado ella *no se propone votar por ser asmática. Su condición de salud no le permite estar en lugares encerrados.*

"En las pasadas Primarias Presidenciales ella votó porque la dejaron votar en primer turno por ser coordinadora. *En esa ocasión ella sufrió un ataque asmático que requirió atención médica.*

"4) Don Erasmo Alvarado tiene 72 años edad [*sic*] y es un elector bona-fide. Si las Primarias a celebrarse el próximo mes de junio se realizan bajo el sistema de colegio cerrado él no podrá acudir a votar a las mismas, *ya que su condición de enfermo-cardíaco no se lo permite*. Por esa razón fue que no pudo votar en las pasadas Primarias Presidenciales.

"Si las Primarias a celebrarse en el próximo mes de junio se celebraran bajo el sistema de colegio abierto, él se propone votar en las mismas.

"5) Edwin Mundo Ríos.— Representante a la Cámara por el Distrito de San Juan 2 del Partido Nuevo Progresista. Este se propone participar en las Primarias del próximo mes de junio y es candidato a reelección por el Distrito de San

respecto, el propio Estado indicó "que no iban a presentar prueba en ese momento y que tampoco se proponían presentarla en ninguna otra ocasión". Idéntica postura forense adoptó el Presidente de la Comisión Estatal de Elecciones

.

---

Juan 2 del Partido Nuevo Progresista. Esta persona atestó que de celebrarse las Primarias bajo el sistema de colegio cerrado *eso le perjudicaría ya que muchas personas que van a votar por él se verían imposibilitadas de hacerlo.*

"6) Lcdo. Francisco González Rodríguez.— Comisionado Electoral del Partido Nuevo Progresista. Este aseguró que la situación de los preparativos para las Primarias del 12 de junio de 1988, ante la Comisión Estatal de Elecciones son sumamente críticos por el atraso existente.

"El Registro Electoral que cerró el pasado 22 de abril de 1988 aún no se le ha entregado a los partidos políticos o sea, las listas electorales. Se supone que antes de prepararse las listas electorales del referido Registro Electoral la Comisión Estatal de Elecciones tiene que haber circulado entre los partidos políticos un listado que se conoce con el nombre de Sumaria. Este es un listado numérico de electores hábiles para votar por precintos y unidad electoral. Con el referido listado los partidos políticos determinan el número de colegios que necesitan para las referidas primarias. Este listado de Sumaria aún al día de hoy no se ha preparado.

"En estos momentos en lo que se está trabajando en la Comisión Estatal de Elecciones es en las 'tripas'. [. . . material que va dentro del maletín electoral y que se llev[a] a los precintos y unidades y que incluye: lápices, gomas, sellos metálicos para las urnas, distintivos de los funcionarios . . .".] Los maletines electorales aún la Comisión Estatal de Elecciones no los ha comprado.

"El sistema de colegio abierto sería mucho más fácil implementarlo en estas Primarias ya que el número de maletines por Unidad Electoral sería menor al igual que el número de salones de clases o unidades a usarse. *Este sistema de colegio abierto le economizaría al pueblo de Puerto Rico aproximadamente un millón de dólares.*

"Para salvaguardar el proceso electoral del fraude electoral consistente en que una persona vote dos veces, se podría emplear una sola Unidad electoral *con una sola Lista Electoral* para los partidos participantes, que en estas Primarias serán el PPD y PNP. En esa Unidad habrían dos mesas y los representantes de cada partido ocuparían una mesa cada uno. Además habrían *dos urnas*, una para los votantes del Partido Popular Democrático y la otra para los del Partido Nuevo Progresista.

"En este momento la Comisión Estatal de Elecciones tiene disponible también las *máquinas perforadoras* que se *utiliza para perforar la Tarjeta de Identificación Electoral.* En adición a estas máquinas perforadoras que se encuentran disponibles en la Comisión Estatal de Elecciones, ya la Comisión compró las que se van a utilizar en las Elecciones Generales pautadas para el día 2 de noviembre del año en curso." (Énfasis suplido.) Apéndice, págs. 9–12.

(Comisión), quien por voz de su abogado informó que suscribía la posición y argumentación del Estado.

## II

De prevalecer el sistema de votación cerrada, irrazonablemente se impediría a los demandantes apelados Mundo Ríos *et al.* —y por extensión a miles de electores calificados, así representados y situados— de participar y votar en dichas primarias. "El pleito es sostenible como una petición de sentencia declaratoria e interdicto por personas claramente afectadas por la ley aquí cuestionada." *Ortiz Angleró v. Barreto Pérez*, supra, pág. 93. En este sentido, el estatuto *fatalmente se aparta* de toda legislación antecesora que rigió en el pasado en elecciones bajo el sistema de colegios cerrados.

El argumento central del Estado en que esencialmente apoya su apelación está tejido en los antecedentes y experiencia de las leyes electorales que rigieron en Puerto Rico. Sin embargo, notamos que los mismos son claramente inaplicables y de poco valor persuasivo, pues tales leyes no padecían del defecto de la presente legislación. Todos los esquemas estatutarios electorales del pasado y más recientes —bajo el colegio cerrado— en mayor o menor grado, reconocían y hacían viable el *voto por afidávit* para atender las circunstancias cuando "un elector no pudiere concurrir a votar en el colegio en que figure su inscripción, *por razón de estar ocupado en funciones indispensables de carácter público* . . .". 16 L.P.R.A. sec. 215. Bajo esta categoría se encontraban médicos y practicantes, enfermeras graduadas y alumnas y cierto personal de los hospitales y clínicas privadas. También un sinnúmero de empleados de las corporaciones públicas. De igual modo se proveía para el *voto ausente* de militares, estudiantes y obreros migrantes. 16 L.P.R.A. sec. 41a. Más aún, el concepto de acceso al voto alcanzó su mayor plenitud en el sistema de colegio abierto. En el Reglamento Oficial de Elecciones Generales, Comisión

Estatal de Elecciones de P.R., 8 de julio de 1984, se implantó la solicitud para votar en el Colegio de Fácil Acceso, para aquellos "electores que tengan una incapacidad temporera o permanente que les ocasione caminar con dificultad o inseguridad o que tengan que usar silla de ruedas y por lo cual estén impedidos para subir y bajar escaleras . . .". Reglamento Oficial de Elecciones Generales, *supra*, Regla 18, pág. 7.

La Ley de Primarias que nos ocupa desconoce estas realidades y mecanismos, e instaura imperfectamente el colegio cerrado. Es un retroceso. Paradójicamente este sistema —en aras de la pureza electoral— cierra las puertas a parte del *spectrum* de electores afiliados, de otro modo capacitados para votar. La ironía del diseño es que incide en los más necesitados: envejecientes, enfermos ambulatorios, obreros y aquellos profesionales que prestan servicios indispensables al país. La desigualdad en el trato no sólo es aparente, sino sensiblemente hiriente.

El Estado también aduce que no existe un solo precedente judicial igual que avale la sentencia del foro de instancia. En su contra invoca principios generales de ciertas decisiones de la jurisdicción norteamericana sobre el sufragio. La dificultad de este enfoque es que ninguno de los casos citados trata sobre las circunstancias peculiares del de autos. Es obvio que la ausencia de precedente sólo puede significar que en dichas jurisdicciones, o no se ha planteado la cuestión o sencillamente no ha habido un estatuto que padezca igual patología. Y como expusiéramos en nuestra concurrencia en *Santa Aponte v. Srio. del Senado*, 105 D.P.R. 750, 768–769 (1977), "[e]n el desempeño de nuestra función judicial, la ausencia de precedente específico no puede ser óbice para crear la norma apropiada y que demos validez y virtualidad —en sus manifestaciones jurídicas y morales— a las diversas disposiciones constitucionales y de ley que rigen el caso de autos. Lo contrario representaría una concepción

estrecha, ajena a la autoridad del Poder Judicial y a las reglas básicas de hermenéutica jurídica: ¿en qué antecedentes judiciales se basó la decisión de *Marbury v. Madison*, 1 Cranch 137 (1803)?".

Por último, es peligrosa la técnica de importar a nuestras playas precedentes genéricos ajenos al medio ambiente. "[L]a función del jurista —al menos la más elevada— no se califica por la coherencia del sistema, sino por la prudencia y adecuación de sus soluciones. No es el mejor jurista el más coherente, 'more geométrico', sino el más justo; pues no llamamos jurista al profesor de lógica, o a quien resulta sabio en el manejo del silogismo, *sino al que sabe lo que corresponde a cada uno.* Y ésta, no es ciencia general sino saber sobre realidades sociales concretas puesto que —al decir de Aristóteles— si bien el fuego quema igual en Atenas que en Persia, las instituciones de Atenas son diversas a las persas." (Énfasis suplido.) C.R. Sanz, *Consideración en torno al abuso del derecho,* 1981-B Rev. Jur. Arg. La Ley 886, 903 (1981).

La ilustrada sala sentenciadora concluyó que el sistema de colegio cerrado "constituye un obstáculo irrazonable contra los electores del Estado Libre Asociado de Puerto Rico en particular, las personas enfermas y envejecientes, empleados de los hospitales que tienen turnos de 7:00 a 3:00 de la tarde y de 3:00 a 11:00 de la noche y los empleados de las empresas que tienen turnos de trabajo las 24 horas, como farmacéuticas, petroquímicas, etc., por lo que dicho sistema de votación tiene el efecto de impedir y gravar sustancialmente la franquicia electoral". Apéndice, pág. 13. Y reproduciendo su dictamen de 10 de mayo de 1988, en *Sara M. Claudio et al. v. Rafael Hernández Colón et al.* (KPE 88-0274), cuyos fundamentos incorporó al presente caso, señaló:

> Esta situación en que se encuentran estas demandantes no es un caso de excepción y menos aún singular o único de ellas.

*Tendríamos verdaderamente que pecar de ingenuo[s] para creer lo contrario. Los jueces no vivimos aislados en esta sociedad y no estamos ajenos a lo que sucede alrededor nuestro. No debemos por tanto prestarnos a jugar el juego de desconocer metódicamente lo que todo el mundo sabe.*

De esa situación fáctica se puede tomar conocimiento judicial por constituir un hecho público, notorio y abrumador.

Tampoco la situación descrita por las demandantes es exclusiva del sexo femenino. También hay hombres que tienen bajo su custodia hijos menores y personas envejecientes.

*El problema que presenta el sistema de colegio cerrado no se limita únicamente a las personas que tienen que cuidar a sus hijos menores de edad, así como a personas enfermas y envejecientes. Se extiende además, a aquellas que tienen que trabajar ese día en horas de la tarde y la ley no les otorga el derecho de votar por adelantado. Basta con mencionar entre éstos al grupo de enfermeras, empleados de hoteles, farmacias, médicos, empleados de fábrica[s] y farmacéuticas, etc. Es menester aclarar que este grupo de personas no es parte en este pleito, pero ello no es óbice para que ignoremos esta realidad.* (Énfasis suplido.) Apéndice, pág. 37.

### III

Sin el voto adelantado y por afidávit, el colegio cerrado deja fuera del proceso a todo ese amplio sector ciudadano que por razones de salud, edad, trabajo u ocupación no puede acudir a votar en el mismo. De su faz, el sistema es totalmente incompatible con el diseño constitucional vigente. Obstruye, excluye y restringe injustificadamente el derecho del elector. Pero más que todo, consagra una norma distante del ideal de justicia viviente. "Tan lejano a la realidad de las cosas humanas plenas, resulta un pensamiento despojado de cualquier consideración equitativa, como una mera corriente simpática de afinidad tendencial, sin la coincidencia del juicio del intelecto práctico —más o menos matizado por la connaturalidad relativa al oficio—. Mundo jurídico descripto por Lewis Carrol en 'Alicia en país de las maravillas'[,] donde se

desarrolla aquella extraordinaria competencia de crocquet: flamencos vivos como masos, erizos vivos como bolas y sotas vivas como arcos; pero —país de las maravillas, *donde todo era vida— sin normas o con normas a las que no se prestaba atención, porque en el juego todo era 'vida' y se escapaba a su consideración.*" (Énfasis suplido y escolios omitidos.) C.R. Sanz, *Sobre el derecho y el proceso*, 1983-B Rev. Jur. Arg. La Ley 875, 884 (1983).

Hace escasamente dos meses en *P.I.P. v. C.E.E.*, 120 D.P.R. 580 (1988), en apoyo de la constitucionalidad de unos comicios análogos —la Ley de Primarias Presidenciales Compulsorias—(3) la mayoría expuso:

> El derecho electoral figura modernamente entre los derechos eminentemente públicos, aunque no puede considerarse exclusivamente estatal, ya que los ciudadanos lo efectúan no en nombre del Estado, *sino más bien en nombre propio.* Véase *La Nueva Constitución de Puerto Rico* [Escuela de Administración Pública, Río Piedras, Eds. U.P.R., 1954], pág. 300 *et seq.* Pocos principios de técnica constitucional han conseguido en Puerto Rico y en Estados Unidos afirmación tan plena. *"[L]a condición fundamental y preeminente [del derecho de sufragio] se ha reconocido a cabalidad."* Ortiz Angleró v. *Barreto Pérez*, 110 D.P.R. 84, 88 (1980). Véanse, a modo de ilustración: *Yick Wo* v. *Hopkins*, 118 U.S. 356, 370 (1886); *Reynolds* v. *Sims*, 377 U.S. 533 (1964). *La obligación del Estado de proteger ese derecho ha sido igualmente reconocida.* Son "objetivos lícitos y apremiantes toda reglamentación que, *sin obstaculizar innecesariamente el voto*, propenda a la realización de un proceso electoral justo, ordenado, libre de fraude, honesto e íntegro. *P.S.P., P.P.D., P.I.P.* v. *Romero Barceló*, 110 D.P.R. 248 (1980); *P.N.P.* v. *Tribunal Electoral*, 104 D.P.R. 741 (1976)". *P.S.P.* v. *Com. Estatal de Elecciones*, 110 D.P.R. 400, 405–406 (1980).

---

(3) Ley Núm. 6 de 24 de septiembre de 1979 (16 L.P.R.A secs. 1321–1353), posteriormente enmendada por las Leyes Núm. 34 de 3 de octubre de 1983, Núm. 2 de 15 de marzo de 1984 y Núm. 89 de 2 de julio de 1987.

*El elector es acreedor a que su voto sea protegido por el
Estado de distintas formas y con distinto rigor bajo una
multiplicidad de situaciones.* Amplia jurisprudencia así lo re-
conoce, tanto en Puerto Rico como en Estados Unidos. Véase
*Ortiz Angleró v. Barreto Pérez*, supra. . . . (Énfasis suplido.)
*P.I.P. v. C.E.E.*, supra, págs. 615–616.

Debemos reafirmar esos principios. La alternativa deci-
soria de posponer estas primarias no es necesaria. Correcta-
mente el tribunal sentenciador concluyó que la Ley Núm. 6
de 24 de septiembre de 1979 (16 L.P.R.A. secs. 1321–1353),
contiene suficientes salvaguardas para evitar el fraude, do-
ble voto y, a su vez, garantizar la pureza del proceso sin me-
noscabar el ejercicio del voto igual. Expongámoslas.

Primero, merece destacarse que se requerirá la *tarjeta
de identificación electoral.* Reglamento para los Procesos de
Primarias de los Partidos Políticos, Comisión Estatal de
Elecciones, 11 de diciembre de 1987, Sec. 3.11(b). La misma,
con el retrato del elector, constituye la prueba documental
fehaciente de mayor rigor. Acredita al máximo su condición
de elegibilidad al ser contrastada con sus circunstancias fí-
sicas y personales. Es el instrumento por excelencia contra
el fraude. *P.S.P., P.P.D., P.I.P. v. Romero Barceló*, supra.

Segundo, el elector calificado deberá votar en el colegio
de votación de su partido, que le fuere asignado de acuerdo
con el precinto en el cual está inscrito, correspondiente a su
domicilio. Art. 4.021 de la Ley Núm. 6, *supra*; Reglamento
para los Procesos de Primarias, *supra*, Secs. 1.9 y 3.3.

Tercero, se exige la firma del elector en la *lista de vota-
ción.* Reglamento para los Procesos de Primarias, *supra*,
Sec. 3.11(b). El consignar en esa lista la firma del elector, se
perpetúa el dato de haberse ejercido ese derecho. Es la cons-
tancia fiel de que no ha participado ni participará en otro
proceso electoral en esas mismas primarias.

Cuarto, como medida cautelar adicional, se establece la
recusación clásica, por el fundamento de que la persona no es

elector calificado, miembro del partido concernido, o está inscrita en más de un colegio. Art. 4.021(e), (f), (g) y (h) de la Ley Núm. 6, *supra*, 16 L.P.R.A. sec. 3171(e), (f), (g) y (h); Reglamento para los Procesos de Primarias, *supra*, Secs. 3.11(f) y (h) y 3.14.

Y, finalmente, se tipifica el voto ilegal como delito susceptible de ser encausado penalmente. Art. 4.021(h) de la Ley Núm. 6, *supra*, 16 L.P.R.A. sec. 3171(h); Reglamento para los Procesos de Primarias, *supra*, Sec. 5.2(A) y (B).

A estas medidas pueden añadirse, por acuerdo a ser adoptado por la Comisión, de estimarlo prudente —enmendatorio de su Reglamento— "que se establezcan las votaciones de los partidos participantes en estas primarias en un *mismo colegio* y que se adopte una *lista única* donde firmen *todos* los que voten en ese *colegio*", y que se perfore la tarjeta electoral al votante con las máquinas que la Comisión tiene al presente disponibles.

No es argüible la tardanza en haberse presentado el recurso. Aplicar al caso de autos la teoría de *incuria* implicaría cercenar los derechos constitucionales de miles de electores.

A reserva de pronunciarnos posteriormente, consideramos que las alternativas ofrecidas en la resolución de este Tribunal, con el propósito de conceder un término a la Comisión y demás partes, conlleva desde sus comienzos el peligro de implantar un sistema de colegio "entreabierto", de cuestionable constitucionalidad. Véase *P.S.P., P.P.D., P.I.P. v. Romero Barceló*, supra, opinión concurrente y disidente. Esa realidad y el factor tiempo nos impide prudencialmente suscribirla. Del filósofo alemán Josef Pieper, en su obra *La Prudencia*, recordamos que el "prudente contempla, por una parte, la realidad objetiva de las cosas y, por otra, el querer y el hacer, *pero en primer lugar la realidad y, en virtud y a*

*causa de ese conocimiento de la realidad, determina lo que debe hacer y lo que no debe hacer".* (Énfasis suplido.)(4)

En resumen, sin recurrir a opciones gravosas ni terapias radicales, el dictamen del tribunal de instancia es justo, balanceado, razonable y, sobretodo, de fácil implantación. No existe otra opción que ordenar que las primarias sean mediante el sistema de colegio abierto. *"[N]o es prudente acunar la democracia que nace, con la canción de cuna de un mundo que se fue."* Mooney, *op. cit.,* pág. 550.

---

(4) Citado por J.D. López Bolado, G. Boades y A.K. De Villanueva, *Contribuciones de la criminología al proceso penal: La capacitación, la personalidad y el deber del juez,* 1981-D Rev. Jur. Arg. La Ley 1175, 1186 (1981).