EDWIN MUNDO RÍOS ET AL., apelados, *v.* HON. RAFAEL HERNÁNDEZ COLÓN ET AL., demandados y apelantes.

*Número:* CE-88-265    *Resuelto:* 26 de mayo de 1988

*Marcos A. Ramírez Irizarry* y *Marcos A. Ramírez Lavandero*, de *Ramírez & Ramírez*, abogados de los apelantes Hon. Gobernador de Puerto Rico y Hon. Secretario de Justicia; *Julia M. Santiago De la Cruz*, abogada de la apelante Comisión Estatal de Elecciones; *Manuel S. Herrero García*, abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR ORTIZ  emitió la opinión del Tribunal.

El 11 de mayo de 1988 el Tribunal Superior, Sala de San Juan (López Rodríguez, Juez), emitió sentencia en la que decretaba que la votación de las primarias de los partidos políticos del 12 de junio de 1988 se lleve a cabo mediante el sistema de colegio abierto. A esos efectos, declaró con lugar la demanda instada por varios electores y libró auto de *injunction* permanente contra la Comisión Estatal de Elecciones (Comisión), su Presidente, funcionarios y empleados. Les ordenó que se abstuvieran de poner en vigor el sistema de votación de colegio cerrado en dichas primarias y las subsiguientes que se realicen en virtud de la Ley Electoral de Puerto Rico.(¹)

Este dictamen se fundamentó principalmente en la conclusión siguiente:

---

(¹) Art. 4.001 y ss. de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3151 y ss.

Por lo tanto, decretamos y resolvemos que el sistema de colegio cerrado para la votación de las Primarias de Candidaturas a Cargos Electivos pautadas para el próximo 12 de junio de 1988 estatuído [*sic*] en el cuarto párrafo del Artículo 4.021 de la Ley Electoral de Puerto Rico, transcrito a la Nota 2 de esta Sentencia, constituye un obstáculo irrazonable contra los electores del Estado Libre Asociado de Puerto Rico en particular, las personas enfermas y envejecientes, empleados de los hospitales que tienen turnos de 7:00 a 3:00 de la tarde y de 3:00 a 11:00 de la noche y los empleados de las empresas que tienen turnos de trabajo las 24 horas, como farmacéuticas, petroquímicas, etc., por lo que dicho sistema de votación tiene el efecto de impedir y gravar sustancialmente la franquicia electoral. Resolvemos además, al igual que lo hicimos en el caso de Sara M. Claudio, supra. [*sic*], que no existe ningún interés apremiante válido del Estado que justifique esa obstrucción.

Adoptamos en su totalidad los fundamentos de derecho expuestos en nuestra Sentencia en el referido caso de Sara M. Claudio, supra. [*sic*], los que hacemos formar parte integrante de esta Sentencia como si literalmente se transcribieran en la misma y la que unimos a la presente como Anejo 1.

Faltando en este momento más de un mes para la celebración del referido evento electoral está totalmente ausente el factor de apremio que estaba presente en el caso de Sara M. Claudio, supra. [*sic*], y que no permitió que aquellas primarias pudieran llevarse a cabo bajo el sistema de colegio abierto.

En adición a las salvaguardas que provee la Ley Electoral de Puerto Rico que hacen del sistema de colegio abierto uno seguro y confiable se puede añadir como una alternativa viable el que se establezcan las votaciones de los partidos participantes en estas primarias en un mismo colegio y que se adopte una lista única donde firmen todos los que voten en ese colegio. (Escolios omitidos.) Sentencia, págs. 13–14.

El 16 de mayo de 1988 el Gobernador de Puerto Rico y el Secretario de Justicia presentaron el recurso de epígrafe, el cual titularon "Escrito de Apelación o Petición de Revisión".

El 18 de mayo de 1988 emitimos la resolución siguiente:(2)

Se acoge el presente recurso como un recurso de apelación. 4 L.P.R.A. sec. 37(a).

A los fines de resolver el recurso y la moción en auxilio de jurisdicción presentados por el Gobernador y el Secretario de Justicia de Puerto Rico, el Tribunal estima procedente y prudente concederle a las partes la oportunidad de manifestar sus respectivas posiciones y contar con información adicional, para cuyos propósitos dispone lo siguiente:

1. La Comisión Estatal de Elecciones tendrá hasta el viernes 20 de mayo de 1988 para informar en cuanto a las medidas que ha tomado, si alguna, para implantar, en las primarias a celebrarse el 12 de junio de 1988 mediante el sistema de colegio cerrado, el voto por adelantado y/o preferente de personas tales como: (a) policías estatales y guardias municipales en servicio activo; (b) oficiales de custodia de la Administración de Corrección en servicio activo; (c) empleados de la Comisión Estatal de Elecciones en servicio activo el día de las primarias; (d) miembros de las Juntas locales y oficiales de la Junta de Inscripción Permanente; (e) médicos, enfermeras, personal paramédico, oficinistas y personal administrativo de los hospitales e instituciones análogas, ya sean públicas o privadas, que estarán trabajando el día de las primarias; (f) bomberos y miembros de la Defensa Civil en servicio activo, y (g) cualquier otro funcionario público o elector en situación análoga.

En caso de no haberse tomado dichas medidas antes del viernes, la Comisión Estatal de Elecciones deberá indicar fundamentadamente el tiempo que necesitaría para implantarlas, bajo el sistema de colegio cerrado, con suficiente antelación a la fecha señalada para celebrar las primarias y, en caso de que no fuere posible implantarlas para dicha fecha, debe indicar el tiempo adicional mínimo que necesitaría para hacerlo, así como la fecha posterior en que podrían celebrarse dichas primarias.

En dicho escrito la Comisión Estatal de Elecciones deberá, además, fijar fundamentadamente su posición sobre el alcance

---

(2) El Juez Asociado Señor Negrón García emitió voto disidente en el que proponía confirmar de inmediato el decreto del Tribunal Superior.

y efecto de los remedios provistos por el tribunal de instancia para la celebración de las primarias bajo el sistema de colegio abierto y la posibilidad de implantarlos en o antes del 12 de junio de 1988, o la fecha posterior para la cual podría hacerlo. *Mundo Ríos v. Gobernador*, 121 D.P.R. 416, 419–20 (1988).

Dentro del término concedido, la Comisión sometió su comparecencia en la que cumple cabalmente con lo solicitado por este Tribunal. La Comisión, luego de señalarnos disposiciones del Reglamento para los Procesos de Primarias de los Partidos Políticos, que regulan el procedimiento sobre el voto ausente, informó que:

El término de sesenta (60) días dispuesto por [la] Sección 3.19 mencionad[a], venció el 12 de abril de 1988. Para esa fecha se habían recibido 13 solicitudes de voto ausente y 404 solicitudes de voto adelantado por electores calificados para emitir dicho voto.

En vista de que ni la Ley Electoral de Puerto Rico ni el reglamento mencionado le concede derecho a voto adelantado o preferente a los médicos, enfermeras, personal paramédico, clericales y administrativos de los hospitales e instituciones análogas, bomberos y miembros de la Defensa Civil, la Comisión compareciente no ha tomado medida alguna para concederle a dichos funcionarios derecho al voto adelantado. Sin embargo, estos electores están protegidos por la disposición del Artículo 5.004 de la Ley Electoral de Puerto Rico.

"En caso de no haberse tomado dichas medidas antes del viernes, la Comisión deberá indicar fundamentadamente el tiempo que necesitaría para implantarlas, bajo el sistema de colegio cerrado, con suficiente antelación a la fecha señalada para celebrar las primarias y en caso de que no fuere posible implantarlas para dicha fecha debe indicar el tiempo adicional mínimo que necesitaría para hacerlo así como la fecha posterior en que podrían celebrarse dichas primarias."

Por lo señalado anteriormente[,] la Comisión compareciente informa que a los fines de implantar las medidas mencionadas en el párrafo precedente bajo el colegio cerrado[,] no hay tiempo hábil con anterioridad al 12 de junio para cumplir con

los trámites administrativos requeridos por dichas medidas tales como: establecer un sistema de notificación adecuado y oportuno[,] establecer fecha límite para que los electores soliciten el derecho, impresión de formularios, preparación de listas especiales para estos casos y otros.

"En dicho escrito la Comisión deberá, además, fijar fundamentadamente su posición sobre el alcance y efecto de los remedios provistos por el tribunal de instancia para la celebración de las primarias bajo el sistema de colegio abierto y la posibilidad de implantarlos, en o antes del 12 de junio de 1988 o la fecha posterior para la cual podría hacerlo."

El Tribunal de Primera Instancia en el caso de Sara M. Claudio y Otros v. Rafael Hernández Colón y Otros, Civil Núm. KPE-88-0274(904) señala las salvaguardas que provee la Ley Núm. 6 de 24 de septiembre de 1979, conocida como Ley de Primarias Presidenciales Compulsorias, para evitar el fraude, a saber:

1[.] *Tarjeta de Identificación Electoral* — El propósito de utilizar esta tarjeta en colegio cerrado es a los únicos efectos de identificar al elector ya que en colegio cerrado no se requieren más garantías por que no es posible que un elector pueda estar en dos (2) sitios a la misma vez.

2. *La firma del elector en la lista electoral y la consignación en la misma del dato de la preferencia del elector en cuanto al partido que se dispone votar* — Este mecanismo fortalece las garant[í]as contra el fraude, ya que el elector figuraría en una sola lista oficial de votación con un número electoral único. En cuanto a la certificación bajo juramento de que no ha participado ni participará en otro proceso electoral en una primaria la Ley Electoral no contempla dicho requerimiento ni para las Elecciones Generales ni para las primarias a celebrarse próximamente, pero podrían implantarse administrativamente.

3. *RECUSACI[Ó]N* — Este mecanismo que puede ser utilizado por cualquier elector no impide que el elector recusado vote. Además, la causal de recusación por no ser miembro del partido se hace prácticamente imposible de aplicar, ya que los partidos no tienen un registro de afiliados a nivel de colegio y de unidad disponible. No tenemos constancia de que algún elector haya sido denunciado por votar ilegalmente.

La Comisión compareciente informa a este Honorable Tribunal que no ha estado trabajando para la celebración de las primarias bajo el sistema de colegio abierto el día 12 de junio de 1988[,] pero que de así ordenarlo el Honorable Tribunal se tomarán las medidas pertinentes para celebrar dicho evento en el sistema de colegio abierto.

Dicha medida no incluye el entintado del elector porque para implantar dicho mecanismo tomaría un máximo de cinco (5) meses adicionales, lo que implicaría la imposibilidad de celebrar las Elecciones Generales en la fecha que establece la Constitución de Puerto Rico. Esto es así debido a que la fórmula química para la tinta es única, indeleble e invisible y que dentro de las especificaciones del suplidor, una vez se adjudique la subasta, exige noventa (90) días para su producción, ésto incluye, además, la producción de los envases especiales.

Actualmente está en proceso la subasta de todo lo concerniente al entintado para las elecciones generales con miras a tenerlo durante el mes de octubre, a tiempo para las Elecciones Generales.

En resumen, sería menester para la Comisión poder implantar las primarias del 12 de junio de 1988 utilizando el colegio abierto los siguientes criterios:

1. Utilizar colegios comunes para ambos partidos con una sola lista de votación,
2. la presentación y perforación de la Tarjeta de Identificación Electoral,
3. la firma del elector en la lista electoral y la consignación en la misma del dato de la preferencia del elector en cuanto a las primarias del partido en que se dispone a votar[,] y
4. la certificación bajo juramento de que no ha participado ni participará en otro proceso electoral de otro partido.

De darse lo anterior, podría generar una economía sustancial de los fondos públicos a utilizarse en las primarias.

Se incluyen como Apéndice II las expresiones de los señores Comisionados en cuanto a la comparecencia de la Comisión. Comparecencia de la Comisión Estatal de Elecciones, págs. 6–9.

Los demandantes apelados y los codemandados apelantes, el Gobernador y el Secretario de Justicia, sometieron

sus respectivos alegatos. Como es de esperarse, los demandantes no objetan el informe de la Comisión y solicitan que se confirme en todas sus partes la sentencia apelada. El Gobernador y el Secretario de Justicia, en un breve escrito, reiteran su posición original y solicitan que se revoque la decisión del Tribunal o, en la alternativa, se posponga cualquier remedio en los méritos para las elecciones posteriores al 12 de junio de 1988; o sea, que solicitan que las primarias del 12 de junio se celebren bajo el sistema de colegio cerrado tal y como el mismo estaba diseñado por la ley y el reglamento al momento de iniciarse esta acción. Resolvemos sin trámite ulterior.

## I

Al día de hoy nadie cuestiona que el derecho al voto es uno de los derechos fundamentales garantizado por la Constitución del Estado Libre Asociado de Puerto Rico, *Ortiz Angleró v. Barreto Pérez*, 110 D.P.R. 84 (1980), y su progenie. Le corresponde al Estado el adoptar las medidas sustantivas y procesales para hacer viable ese derecho fundamental. Siempre y cuando estas garantías no infrinjan indebidamente ese derecho, este Tribunal deberá guardar una debida deferencia al arbitrio legislativo.

Debemos aclarar que ante nos no se plantea que uno u otro sistema, el cerrado o el abierto, es el único que garantiza el pleno ejercicio de los derechos electorales de nuestros ciudadanos. Lo que está planteado es si el sistema de colegio cerrado, tal como fue originalmente implantado para las próximas primarias, resiste el ataque constitucional de los electores demandantes, del cual se hizo eco el ilustrado magistrado de instancia. Resolvemos que no.

Para resolver tomamos como un hecho evidente, y no controvertido, el que la propia Comisión admite que "a los fines de implantar las medidas mencionadas en el párrafo precedente bajo el colegio cerrado no hay tiempo hábil con ante-

rioridad al 12 de junio para cumplir con los trámites administrativos requeridos por dichas medidas . . .". Comparecencia de la Comisión Estatal de Elecciones, pág. 7.

De manera que, para celebrar las primarias bajo el colegio cerrado, tendríamos que tomar una de dos (2) medidas:

1. dejar en vigor la ley y el reglamento tal y como están vigentes al día de hoy. Tal decisión afectaría a los demandantes apelados, a las personas en situación análoga y demás electores en las situaciones previstas en nuestra orden original, o

2. posponer las primarias para una fecha posterior, para que se pueda implantar un sistema adecuado.

Ambas resultan inaceptables. La primera, porque podría conllevar el que un número indeterminado pero sustancial de electores no pueda votar en dicho evento electoral por razón de la decisión del Estado. La segunda, porque trastocaría todo el diseño y ordenación de labores y términos provistos para las elecciones generales.

Lo anterior nos mueve a resolver que aunque el sistema de colegio cerrado no es inconstitucional per se, según ha sido implantado, sin otras alternativas factibles, es inconstitucional.

Ante esa realidad, y en consideración de que de la información provista por la Comisión se desprende que el sistema de votación por colegio abierto se puede implantar en las primarias del 12 de junio siguiendo los métodos señalados por la Comisión, no queda duda de que esta última alternativa es la más razonable y adecuada. Tiende, bajo los hechos presentes en este momento, a darle mayor validez y garantía a un efectivo ejercicio al voto por los electores interesados en participar en dichas primarias.[3]

---

[3] Por otro lado, las expresiones de los Comisionados Electorales revelan claramente que los partidos políticos no se verán afectados por nuestra decisión.

*Se confirmará la sentencia apelada y se ordenará a la Comisión Estatal de Elecciones a celebrar las primarias el 12 de junio de 1988 bajo el sistema de colegio abierto, según el método señalado en la comparecencia de dicha Comisión, recogidos en las págs. 481-483 de esta opinión. Se devolverá el caso al tribunal de instancia para que, en forma compatible con lo aquí resuelto, dilucide cualquier controversia que puedan plantear las partes en cuanto a la fase ejecutoria de su sentencia.*

El Juez Asociado Señor Negrón García emitió opinión concurrente. El Juez Asociado Señor Alonso Alonso disiente mediante opinión, a la cual se une el Juez Presidente Señor Pons Núñez.

—O—

Opinión concurrente del Juez Asociado Señor Negrón García.

Al suscribir la opinión de este Foro confirmatoria del decreto de inconstitucionalidad del Tribunal Superior, Sala de San Juan (Hon. Arnaldo López Rodríguez, Juez), consideramos de rigor sucintamente reiterar —en abono de ese dictamen— los principios controlantes expuestos separadamente en nuestra ponencia del pasado 18 de mayo de 1988.

I

Primero, "el sistema de colegio cerrado no es inconstitucional per se . . .". Opinión del Tribunal, pág. 485. En el caso de autos, la alternativa de inconstitucionalidad ha sido la única ruta decisoria disponible por la magnitud del defecto detectado por el tribunal de instancia.

"El mismo es resultado directo de la Asamblea Legislativa, *por primera vez en la historia del país*, [haber] impuesto ese sistema de votación, e *inexplicablemente, no*

haber provisto los mecanismos necesarios para viabilizar el voto adelantado para todos aquellos electores *bona fide* del Partido Nuevo Progresista (P.N.P.) y Partido Popular Democrático (P.P.D.) —que por razón de situaciones peculiares de familia, impedimentos físicos o estar ocupados en funciones indispensables— de otro modo, no podrán concurrir o enclaustrarse a votar en un colegio cerrado de horario limitado." (Énfasis suplido.) Ponencia de 18 de mayo de 1988, pág. 3.

Y segundo, "[t]odos los esquemas estatutarios electorales del pasado y más recientes —bajo colegio cerrado— en mayor o menor grado reconocían y viabilizaban el *voto por affidavit* para atender las circunstancias cuando 'un elector no pudiere concurrir normalmente a votar en el colegio en que figure su inscripción, *por razón de estar ocupado en funciones indispensables de carácter público.*' (16 L.P.R.A. sec. 215; Equity Ed. 1955, id., Ed. 1961). Bajo esta categoría se encontraban médicos y practicantes, enfermeras graduadas y alumnas y cierto personal de los hospitales y clínicas privadas. También un sinnúmero de empleados de las corporaciones públicas. De igual modo se proveía para el *voto ausente* de militares, estudiantes y obreros migrantes, (16 L.P.R.A. sec. 41a; Equity Ed. 1972). Más aún, el concepto de acceso al voto alcanzó su mayor plenitud en el sistema de colegio abierto. En el *Reglamento Oficial de Elecciones Generales* de 1984 se implantó la solicitud para votar en el *Colegio de Fácil Acceso*, para aquellos 'electores que tengan una incapacidad temporera o permanente que les ocasione caminar con dificultad o inseguridad o que tengan que usar silla de ruedas y por lo cual estén impedidos para subir y bajar escaleras. . .' *Regla 18.*

La Ley de Primarias que nos ocupa desconoce estas realidades y mecanismos, e instaura imperfectamente el colegio cerrado. Es un retroceso. Paradójicamente este sistema —en aras de la pureza electoral— cierra las puertas a parte del

*spectrum* de electores afiliados, de otro modo capacitados para votar. La ironía del diseño es que incide en los más necesitados: envejecientes, enfermos ambulatorios, obreros y aquellos profesionales que prestan servicios indispensables al país. La desigualdad en el trato no sólo es aparente, sino sensiblemente hiriente". Ponencia de 18 de mayo de 1988, págs. 6–7.

## II

El hacer viable el acceso razonable al voto de todos tiene su génesis en el Art. II, Sec. 2 de nuestra Ley Fundamental, Const. E.L.A., L.P.R.A., Tomo 1, la cual se inspira en el ejercicio al sufragio real e igual. Como fuente de referencia, la Asamblea Constituyente reconoció expresamente su extensión —a título de ejemplo— a los no videntes[1] con el propósito de situarlos en parangón con ese vasto sector de ciudadanos que padecen *físicamente* de limitaciones por razón de nacimiento, accidentes, enfermedades o el desgaste natural del simple discurrir de los años. Con sabia prudencia dejó estos casos de excepción "para ser atendidos con mayor eficacia por la acción legislativa correspondiente . . .".[2]

Bajo esta visión es comprensible que, en la medida en que la Constitución proyecta no sólo valores sustantivos, sino instrumentales —en constante evolución y enriquecimiento— todo diseño estatutario electoral que se aparte de ese mandato y no atienda justicieramente estas realidades presenta serios problemas. Adolece de una imperfección que debe ser remediada inicialmente por la Legislatura y el organismo electoral delegado y, en su ausencia, finalmente por el Poder Judicial. Aunque las soluciones son múltiples y en ocasiones complejas, "lo que no se puede hacer es negar

---

[1] 4 Diario de Sesiones de la Asamblea Constituyente 2563 (1951).
[2] Íd.

el problema, diría Ortega a nadie calma la sed saber que no podrá beber".(3)

—O—

Opinión disidente del Juez Asociado Señor Alonso Alonso, a la cual se une el Juez Presidente Señor Pons Núnez.

La intervención judicial en este caso, a escasamente diez y ocho (18) días de celebrarse las primarias y ausente una clara y opresiva violación constitucional, no es prudente ni se justifica.

A escasamente diez y ocho (18) días de la celebración de las primarias de los partidos políticos, la mayoría de este Tribunal cambia el proceso de votación provisto por la ley y por la reglamentación de la Comisión Estatal de Elecciones (C.E.E.) de colegio cerrado a uno de colegio abierto. Devuelve, además, el caso al Tribunal Superior, Sala de San Juan, para que éste dilucide cualquier controversia que dicho cambio pueda ocasionar.

La impugnación constitucional ha llegado a nosotros a tan corto plazo de la fecha fijada para la celebración de dichas primarias que los procesos preparatorios para las mismas se han hecho según el sistema de colegio cerrado.

La intervención judicial en el curso normal de este proceso de trascendencia y profunda significación social no debe ser obtenida en fecha tan cercana de la celebración de las primarias, sino sólo como urgente y extraordinario remedio ante una clara y opresiva violación constitucional. En el presente caso no se ha demostrado que esa sea la situación. *P.S.P., P.P.D., P.I.P. v. Romero Barceló*, 110 D.P.R. 248, 263 (1980); *Reynolds v. Sims*, 377 U.S. 533 (1964).

En su comparecencia ante nos la C.E.E. sostuvo que no se cuenta con suficiente tiempo con anterioridad al 12 de ju-

---

(3) A.E. Mooney, *Comentarios al "estatuto de los partidos políticos"*, 1983-A Rev. Jur. Arg. La Ley 772 (1983).

nio de este año para celebrar las primarias bajo el colegio cerrado y proveer para el voto preferente y ausente de determinados electores. Por ello, este Tribunal ordena la celebración de primarias mediante colegio abierto.

Las medidas tomadas alteran significativamente los procesos provistos en la Ley de Primarias y en la Ley Electoral. Desde hace cinco (5) meses la C.E.E. aprobó un reglamento para las primarias. También ha aprobado un manual de primarias. Ambos instrumentan el colegio cerrado que dispone la ley.

Todas las instituciones, organismos y candidatos, entre otros, han hecho sus preparativos para las primarias en base a las disposiciones legales y reglamentarias vigentes. Las instrucciones dadas a los funcionarios de colegio y a los partidos políticos están diseñadas para el funcionamiento de un sistema de colegio cerrado.

Ahora de forma repentina se cambia toda la planificación, diseño e instrumentación del método de votación establecido por la Asamblea Legislativa en 1980 y en 1984. Las consecuencias y el alcance de este cambio de sistema de votación no son previsibles. Sus efectos están por verse.

Por último, pero no menos importante, es altamente preocupante que se le conceda facultad al tribunal de instancia para que dilucide las controversias que este cambio conlleva. Se coloca en manos de un tribunal de instancia dilucidar controversias que surgirán del disloque que provoque el cambio ordenado. Los tribunales de justicia están para resolver casos y controversias, no para administrar un sistema electoral. *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958); *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715 (1980); *El Vocero v. Junta de Planificación*, 121 D.P.R. 115 (1988).