WILLIAM A. RIVERA RIVERA y OTROS, demandantes y peticionarios, *v.* RAFAEL HERNÁNDEZ COLÓN y OTROS, demandados y recurridos.

*Número:* CE-88-312     *Resuelto:* 10 de junio de 1988

*Carlos Jesús Pérez Santiago*, abogado de los peticionarios; *Arturo L. Hernández González*, abogado de la Administradora de Corrección.

## I

PER CURIAM: El 20 de mayo de 1988, William A. Rivera Rivera, por derecho propio y en representación de un grupo de confinados, presentó en el Tribunal Superior, Sala de Ponce, una petición denominada *Injunction y Sentencia Declaratoria*. Demandó al Gobernador de Puerto Rico, Hon. Rafael Hernández Colón, al Secretario de Justicia, Hon. Héctor Rivera Cruz, a la Administradora de Corrección, Dra. Mercedes Otero de Ramos, y al Presidente de la Comisión Estatal de Elecciones, Lcdo. Marcos Rodríguez Estrada.

En síntesis, alegó su condición de confinado en el campamento penal La Pica, Jayuya; ser presidente y miembro representativo de la Comunidad de Personas Confinadas de Puerto Rico; haberse enterado por la prensa que los confinados no podían participar en las primarias del Partido Popular Democrático (P.P.D.) y del Partido Nuevo Progresista (P.N.P.) a celebrarse el próximo 12 de junio de 1988; que antes se les había permitido participar en las primarias presidenciales, y con respecto a las primarias de 12 de junio de 1988 había realizado gestiones infructuosas ante la Administración de Corrección y la Comisión Estatal de Elecciones para participar. Adujo que ello constituía una violación a las leyes y a nuestra Constitución, y solicitó la paralización de

dichas primarias hasta que se les permitiera participar. Pidió una orden dirigida a la Comisión Estatal de Elecciones para garantizarles ese derecho.

El 23 de mayo de 1988 el tribunal designó al Lic. Carlos J. Pérez Santiago, abogado de oficio de los demandantes. Señaló y celebró una vista el 31 de mayo de 1988. Comparecieron todas las partes. En la misma declaró el demandante Rivera Rivera y, como testigos, los confinados Roberto Albizu Morales y Miguel Guadalupe. Se admitió en evidencia, como *exhibit* I, una lista de firmas de *confinados interesados en emitir su voto en las primarias locales*. Terminada de desfilar esa prueba, se desestimó la acción contra el Gobernador de Puerto Rico y el Secretario de Justicia. El tribunal se reservó el fallo en cuanto a los restantes demandados, quienes optaron por someter el caso sin presentar prueba.

El 8 de junio el tribunal declaró sin lugar la demanda. En su ponderada sentencia, en lo pertinente, concluyó que los demandantes ni verbalmente ni por escrito —en o antes del 12 de abril de 1988— solicitaron de la Comisión Estatal de Elecciones o de los funcionarios políticos que representan a los Comisionados Electorales en la Junta Administrativa del Voto Ausente, "participar en el proceso primarista a tener efecto el día 12 del corriente mes de junio. Tampoco requirieron de los funcionarios o del liderato de los partidos políticos correspondientes, el que se les suministraran los formularios de solicitud de voto ausente". Sentencia, pág. 5.

Sin embargo, encontró probado que "[p]ara el mes de febrero de 1988 se realizó un paro general en varias instituciones penales, por parte de los confinados, donde exigían reunirse con altos líderes políticos del país, lo cual no lograron. *Se les informó por la Dra. Otero de Ramos, Administradora de Corrección, y a raíz de dicho paro, que la Administración proveería acceso a los funcionarios de la Comisión Estatal de Elecciones para realizar sus trabajos dentro de las instituciones penales* para las primarias de los

partidos nacionales de los EE.UU. a efectuarse el 20 de marzo de 1988, a los fines de que aquéllos, los confinados que lo desearan y cualificaran, votaran en dichas primarias, lo cual en efecto se materializó". (Énfasis suplido.) Sentencia, pág. 5.

Determinó, como mera alegación, que Rivera Rivera solicitó literatura e información a la Comisión Estatal de Elecciones, que supuestamente no recibió. "Igualmente, manifestó desconocer el contenido del Reglamento de la Comisión Estatal de Elecciones y en particular la sección del mismo que establece los requisitos y procedimientos para solicitar el derecho a emitir el voto ausente en las elecciones de Puerto Rico. Todo envío de documentos o comunicaciones escritas de confinados a instituciones gubernamentales, judiciales, etc., se canaliza a través de los funcionarios de la Administración de Corrección. Igualmente, los confinados gozan de un sistema de correo en las instituciones penales. El demandante de epígrafe sometió personalmente el presente pleito en la Secretaría de este Tribunal, a petición suya y acompañado y transportado por personal de la Administración de Corrección, destacado en el Campamento La Pica de Jayuya, Puerto Rico. La Comisión Estatal de Elecciones, y la Administración de Corrección no les ha negado en forma alguna a los confinados la oportunidad de solicitar los formularios de referencia, ni les ha impedido a éstos el ejercicio de ese derecho, ya que éstos no radicaron en dicha Comisión, ni una sola solicitud requiriendo la entrega del formulario del voto ausente de parte de los confinados." Sentencia, págs. 5–6.

A base de estos hechos, dicho foro analizó nuestros pronunciamientos respecto al derecho constitucional al "sufragio universal, igual, directo y secreto" encarnado en el Art. II, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 261, y los "objetivos lícitos y apremiantes" de toda reglamentación encaminados a lograr "un proceso electoral justo, or-

denado, libre de fraude, honesto e íntegro", "sin obstaculizar innecesariamente el voto". *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 405, 406 (1980); *P.S.P., P.P.D., P.I.P. v. Romero Barceló*, 110 D.P.R. 248 (1980); *P.N.P. v. Tribunal Electoral*, 104 D.P.R. 741 (1976); *P.I.P. v. C.E.E.*, 120 D.P.R. 580 (1988).

En armonía con las disposiciones aplicables de la Ley Electoral de Puerto Rico y su reglamentación,[1] resolvió que la inacción y falta de gestiones de los confinados derrotaban sus pretensiones, las cuales implícitamente caracterizó como tardías.

## II

Erró el ilustrado foro de instancia. El 11 de diciembre de 1987 se aprobó el Reglamento para los Procesos de Primarias de los Partidos Políticos. En sus Secs. 1.8 y 3.17 reconoce el derecho a votar de los confinados.[2]

Este reglamento pauta el procedimiento a seguir y equipara a los confinados con los electores con derecho al voto ausente. La Sec 3.19, Voto de Electores Ausentes, enumera los requisitos necesarios, a saber, "[c]on no menos de sesenta

[1] La Ley Núm. 3 de 8 de septiembre de 1980 enmendó la Ley Electoral Núm. 4 de 20 de diciembre de 1977 para incluir a los confinados entre los ciudadanos con derecho al voto ausente. Esta ley fue enmendada el 10 de enero de 1983 y el artículo renumerado como el 5.035. (16 L.P.R.A. sec. 3240).

Por los Arts. 7.004 y 5 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. secs. 3304 y 1325, tienen derecho a participar en referéndum y a votar en las primarias presidenciales.

[2] "Serán electores capacitados para votar en las primarias los que pertenezcan o estén afiliados al partido político que celebre las mismas, y que cumplan con los requisitos de la Ley Electoral de Puerto Rico y este reglamento. Reglamento para los Procesos de Primarias de los Partidos Políticos, 11 de diciembre de 1987, Sec. 1.8.

"Tendrán derecho a votar mediante el procedimiento de voto ausente de sus colegios, los electores debidamente cualificados que se encuentren:

.    .    .    .    .    .    .    .

"g) Confinados en las instituciones penales." Reglamento de Primarias, *supra*, Sec. 3.17(g).

(60) días de anticipación a la fecha de la elección, solicitará de su partido, por escrito y bajo juramento, una 'Papeleta de Votación para Elector Ausente'," haciendo constar determinada información;(3) la verificación por el partido concernido sobre ese derecho, y la entrega o remisión prontamente por certificado al peticionario a su dirección consignada de "una papeleta de votación, un sobre pequeño con un blanco para la identificación del precinto, y otro sobre debidamente pre-dirigido con el número de solicitud aprobado para la devolución por correo de dicho material. El partido hará constar en un registro especial la fecha del envío y recibo de todos estos materiales. Se mantendrá un inventario actualizado de todo el proceso del voto ausente". Reglamento de Primarias, *supra*, Sec. 3.19.

Se advierte, pues, que la responsabilidad del proceso primarista recae en primer lugar en los partidos políticos. Claro está, ello no excluye a la Comisión Estatal de Elecciones a través de su Presidente. Éste, como figura principal, tiene la responsabilidad, por imperativo del Art. 4.020 de la Ley Electoral de Puerto Rico, "en unión al Comisionado Electoral del partido concernido, [de] diri[gir] e inspeccio[nar] las primarias en cada caso, pon[er] en vigor las reglamentaciones que prueben los organismos directivos centrales de cada partido que no conflijan con las disposiciones de este Subtítulo y que hayan sido radicadas ante la Comisión bajo certificación del Presidente y Secretario del partido". 16 L.P.R.A. sec. 3170.

---

(3) "(a) Nombre y apellidos paterno y materno; (b) Nombr[e] del padre y de la madre; (c) Sexo; (d) Fecha de nacimiento; (e) Número electoral; (f) Dirección exacta de su domicilio en Puerto Rico; (g) Dirección del lugar donde temporeramente se encuentre; (h) Dirección postal a la cual debe enviarse la papeleta; (i) Razón que le impide ir al colegio de votación el día de la elección." Reglamento de Primarias, *supra*, Sec. 3.19.

■ Ese mandato legislativo significa que el razonamiento de la ilustrada sala de instancia —que impuso a los demandantes Rivera Rivera *et al.* la obligación exclusiva de gestionar y solicitar el voto ausente— es injusto. El diseño electoral prevaleciente conlleva el deber de diligencia no sólo de los electores interesados, incluso los ausentes, sino de los partidos políticos y de la Comisión Estatal de Elecciones por conducto de su Presidente. Aunque Rivera Rivera y sus otros compañeros tenían acceso al servicio postal, obviamente por razón de su confinamiento, sus libertades, movimientos y contactos con el mundo exterior eran y son limitados. El prisma adjudicativo judicial tiene que ser más amplio, a la par que riguroso, en atención a estas realidades peculiares y a las restricciones que éstas imponen sobre el derecho de los confinados a votar. No puede imponerse a ellos exclusivamente el peso de las diligencias.

Los derechos se plasman y cobran vida en la realidad y no en los documentos expositivos de las leyes y reglamentos. No es suficiente trasladar toda la carga a los demandantes peticionarios Rivera Rivera *et al.* A sus omisiones deben sumárseles también las incurridas por los partidos políticos, la Comisión Estatal de Elecciones y la Administración de Corrección. No hay la más mínima constancia de diligencias de estos últimos. No hubo orientación ni esfuerzo para hacer viable sus participaciones. El desinterés ha sido total. Ello contrasta con la actuación y los remedios provistos a los confinados para las primarias presidenciales.

■ En el cuadro peculiar expuesto, cobra mayor vigencia nuestro pronunciamiento de que el Estado puede implantar requisitos razonables, pero "de tal forma que no impongan al elector condiciones de difícil cumplimiento o exigencias que menoscaben su derecho al voto o desalienten su ejercicio". *P.P.D. v. Admor. Gen. de Elecciones*, 111 D.P.R. 199, 242 (1981).

En las circunstancias de autos, en atención al escaso tiempo restante para la celebración de este evento electoral, lo dificultoso que resultaría extender nuestra decisión a toda la población penal —en ausencia de reclamo individual y la certificación del pleito como de clase— procede prudencialmente que nuestro mandato se limite a que la Comisión Estatal de Elecciones, los partidos políticos P.P.D. y P.N.P., y la Administración de Corrección, sin excusa, le den viabilidad al ejercicio del derecho al voto, en el proceso primarista del domingo 12 de junio de 1988, del demandante peticionario William A. Rivera Rivera y aquellos otros nombrados en el *exhibit* I de la parte demandante.

*Se dictará la correspondiente sentencia.*

El Juez Presidente Señor Pons Núñez disiente sin opinión escrita. La Juez Asociada Señora Naveira de Rodón emitió opinión disidente, a la cual se une el Juez Asociado Señor Alonso Alonso.

—O—

Opinión disidente emitida por la Juez Asociada Señora Naveira de Rodón, a la cual se une el Juez Asociado Señor Alonso Alonso.

En el presente caso un grupo de ciento siete (107) confinados del campamento penal La Pica situado en el pueblo de Jayuya pretenden, luego de implícitamente renunciar su derecho a participar en las primarias que se celebrarán el domingo 12 de junio de 1988, paralizar el proceso primarista y que se les conceda un privilegio especial eximiéndolos de cumplir con los requisitos del voto ausente. No podemos estar de acuerdo con este reclamo. Veamos.

I

El 20 de mayo de 1988 el Sr. William A. Rivera Rivera, confinado en el campamento penal La Pica ubicado en el pue-

blo de Jayuya, presentó, por derecho propio, una petición de *injunction* en la que alegaba que se le estaban violando sus derechos constitucionales al no permitirle participar en las primarias de los partidos políticos locales a celebrarse el domingo 12 de junio de 1988. Solicitó la paralización del proceso primarista y que se le permitiese participar en el mismo. A esta petición, mediante solicitud aparte, se le unieron ciento seis (106) confinados más del mismo campamento penal. *Exhibit* I de 24 de mayo de 1988.

El 8 de junio de 1988 el tribunal de instancia dictó sentencia denegatoria de la solicitud de *injunction*. No conformes, los demandantes peticionarios recurren ante este Tribunal y plantean la comisión de los errores siguientes:

I. Erró el honorable Tribunal al declarar sin lugar la solicitud de Injunction basándose en que las primarias son de la exclusiva responsabilidad de los partidos políticos y en que no cumplieron con el requisito de informar la intención de participar en las primarias con 60 días de anticipación, sin considerar que el no permitir la Administración de Corrección políticos en la cárcel anula la función de los partidos para lograr que ejerzan su derecho al voto los confinados y a su vez anula la posibilidad de notificar con 60 días de anticipación, que debe hacerse a través de los partidos.

II. Erró el Tribunal al no determinar que no garantiza el derecho al voto de los confinados una norma —la que asigna la responsabilidad de las primarias a los partidos políticos— que el mismo Estado no acata por vía de la agencia gubernamental que precisamente regula la vida de los confinados en las cárceles, y que por tanto, en cuanto a los confinados es inconstitucional.

III. Erró el Tribunal al no establecer que las circunstancias de los confinados son unas muy especiales a quienes no necesariamente se aplican "todas las categorías de ciudadanos que señala la ley y el reglamento". Petición de *injunction*, págs. 4–5.

## II

En la sentencia el foro de instancia determinó, como cuestión de hecho, que "[l]os mencionados demandantes no sometieron petición alguna verbalmente ni por escrito —en o antes del 12 de abril de 1988— a la Comisión Estatal de Elecciones como entidad, ni a los funcionarios políticos que representan a cada uno de los Comisionados Electorales en la Junta Administrativa del Voto Ausente, demostrativa de su interés en participar en el proceso primarista a tener efecto el día 12 del corriente mes de junio. Tampoco requirieron de los funcionarios o del liderato de los partidos políticos correspondientes, el que se les suministraran los formularios de solicitud de voto ausente". Sentencia, págs. 4–5.

En el recurso presentado, los peticionarios a su vez indican que luego de un paro lograron votar en las primarias presidenciales efectuadas el 20 de marzo de 1988. Expresan también que en aquella ocasión no tuvieron que cumplir con el requisito de sesenta (60) días de solicitud anticipada.

## III

Los confinados tienen derecho a votar en las primarias de los partidos locales, pero este derecho, a pesar de ser fundamental, no es absoluto. El Estado puede imponer requisitos específicos para el ejercicio de ese voto ausente. Art. 5.035 de la Ley Núm. 3 de 8 de septiembre de 1980, según enmendada, 16 L.P.R.A. sec. 3240; Secs. 1.8 y 3.17 del Reglamento para los Procesos de Primarias de los Partidos Políticos de 11 de diciembre de 1987 (en adelante Reglamento de Primarias). "[E]stos requisitos deben [ser razonables e] implantarse de tal forma que no impongan al elector condiciones de difícil cumplimiento o exigencias que menoscaben su derecho al voto o desalienten su ejercicio." *P.P.D. v. Admor. Gen. de Elecciones*, 111 D.P.R. 199, 242 (1981). "Ni la potestad legislativa de reglamentar como tampoco el derecho al sufra-

gio pueden operar bajo un esquema de disposiciones legislativas arbitrarias o *en irrestringidos reclamos de electores*; no son valores que se implementan [*sic*] en términos absolutos." (Énfasis suplido.) *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 406 (1980).

En el caso de autos la Sec. 3.19 del Reglamento de Primarias, *supra*, en relación con el voto de electores ausentes dispone:

Cualquier elector con derecho a votar como elector ausente, que no pudiera estar en su colegio electoral en la fecha de celebración de la misma, deberá emitir su voto mediante el siguiente procedimiento:

Todo solicitante del voto ausente cuya petición fuere aceptada, se entenderá que votó y así le será notificado a su Colegio de Votación a través del partido concernido.

*Con no menos de sesenta (60) días de anticipación a la fecha de la elección, solicitará de su partido, por escrito y bajo juramento, una "Papeleta de Votación para Elector Ausente"*, haciendo constar en tal petición la siguiente información:

   a) Nombre y apellidos paterno y materno
   b) Nombr[e] del padre y de la madre
   c) Sexo
   d) Fecha de Nacimiento
   e) Número electoral
   f) Dirección exacta de su domicilio en Puerto Rico
   g) Dirección del lugar donde temporeramente se encuentre
   h) Dirección postal a la cual debe enviarse la papeleta
   i) Razón que le impide ir al colegio de votación el día de la elección.

Al recibir dicha solicitud, el partido verificará si el solicitante es elector con derecho a votar en la elección de que se trate, y en caso afirmativo, entregará o le remitirá prontamente por correo certificado al peticionario, a la dirección a tal fin consignada en la solicitud, una papeleta de votación, un sobre pequeño con un blanco para la identificación del precinto, y otro sobre debidamente pre-dirigido con el número de

solicitud aprobado para la devolución por correo de dicho material. El partido hará constar en un registro especial la fecha del envío y recibo de todos estos materiales. Se mantendrá un inventario actualizado de todo el proceso del voto ausente. (Énfasis suplido.)

No cabe duda que el requisito establecido de que para emitir un voto ausente hay que solicitar una "Papeleta de Votación para Elector Ausente" con por lo menos sesenta (60) días de anticipación a la fecha en que se celebrará la primaria es razonable. Los propios peticionarios admiten que estaban familiarizados con este proceso. Apenas unos meses antes, en marzo, habían ejercido su derecho a votar en las primarias presidenciales luego de vencer una serie de obstáculos. A pesar de esta experiencia, no utilizaron los mecanismos que tenían a su disposición para cumplir con el requisito de los sesenta (60) días. Ni verbalmente ni por escrito manifestaron a los funcionarios políticos o a la Comisión Estatal de Elecciones su interés en participar en las primarias. No es hasta el 20 de mayo cuando por primera vez acuden con su reclamo ante un tribunal. La Administración de Corrección sin dilación les facilitó acceso al tribunal y éste les designó inmediatamente un abogado para representarlos. Resulta obvio que de haber mostrado, en tiempo, interés en participar en las primarias sus reclamos se hubiesen atendido. Tenían a su disposición los mecanismos adecuados para cumplir con los requisitos reglamentarios.

Al igual que en *Mundos Ríos v. Gobernador*, 121 D.P.R. 477 (1988), la impugnación constitucional llega a nosotros a corto plazo de la fecha para la celebración de las primarias. "La intervención judicial en el curso normal de este proceso de trascendencia y profunda significación social no debe ser obtenida en fecha tan cercana de la celebración de las primarias, sino sólo como urgente y extraordinario remedio ante una clara y opresiva violación constitucional." *Mundo Ríos v. Gobernador*, supra, pág. 489, opinión disidente

del Juez Asociado Señor Alonso Alonso. También, al igual que en ese caso, aquí no se ha demostrado que esta sea la situación.

Bajo los hechos específicos del caso no procedía el reclamo de los peticionarios. Éstos conocían del requisito de solicitar el voto ausente con por lo menos sesenta (60) días de anticipación a las primarias. Tenían a su disposición los mecanismos para hacer constar su interés en participar y cumplir con el esquema electoral. Se cruzaron de brazos y ahora esperan, a escasos tres (3) días de las primarias, que éstas se paralicen y se estructure un mecanismo especial que les permita participar. No podemos acceder a este irrazonable y tardío reclamo.